**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

CASE NO.: _____

PHILIP W. TIPPETT and INGRID
TIPPETT, individually and on
behalf of all others similarly situated,

    *Plaintiffs*,

v.

WELLS FARGO BANK, N.A., successor by
merger to WELLS FARGO FINANCIAL
BANK,

    *Defendant.*

**CLASS ACTION**
**JURY DEMAND**

**CLASS ACTION COMPLAINT**

Plaintiffs PHILIP W. TIPPETT and INGRID TIPPETT, on behalf of themselves and all others similarly situated, sue Defendant WELLS FARGO BANK, N.A., successor by merger to WELLS FARGO FINANCIAL BANK, ("Wells Fargo" or "Defendant"), on the grounds set forth below.

## I. INTRODUCTION

1. Wells Fargo has a reputation for its deceptive lending practices. In the last decade alone, consumers and regulators have pursued claims against Wells Fargo for a variety of illegal tactics, including opening unnecessary or unauthorized accounts on customers' behalves; unilaterally modifying the repayment terms of borrowers' home loans; reducing customer credit limits and freezing lines of credit without justification; bundling or "adding on" products such as car and pet insurance to customer accounts without full disclosure; artificially inflating the amounts charged consumers for force-placed insurance; and falsifying borrowers' income

2

documents to facilitate their approval for loans they were not, in fact, qualified to receive.[1] Wells Fargo has made a practice of gaming the system to its advantage, reaping exorbitant and illegal profits at their clients' expense.

2. Plaintiffs in this case, and the class of Wells Fargo borrowers they seek to represent, are victims of Wells Fargo's pattern of misconduct. Specifically, at the time they obtained purchase-money financing from Wells Fargo for their new home, Plaintiffs and the Class members entered into an EquityLine with FlexAbility Agreement (also referred to herein as the "EquityLine Agreement") with Wells Fargo, pursuant to which they were given access to a revolving line of credit secured by second mortgages on their homes.[2]

3. Because these HELOC loans are secured by second mortgage liens on borrowers' homes, it was crucial that the liens terminate *after* the final maturity date for the loans—the date on which the borrowers must repay the outstanding balances in full. Otherwise, if Wells Fargo's security interests in the properties terminated before the borrowers had repaid their debt, the balance of the debts due and owing would be unsecured, thus exposing Wells Fargo to an increased risk of nonpayment across the entire product line.

---

[1] *See, e.g.,* Ethan Wolff-Mann, *Wells Fargo scandals: The complete timeline*, available at http:/finance.yahoo.com/news/wells-fargo-scandals-the-complete-timeline-141213414.html; Gretchen Morgenson, *Wells Fargo Is Accused of Making Improper Changes to Mortgages*, N.Y. TIMES, June 14, 2017, available at http:/www.nytimes.com/2017/06/14/business/wells-fargo-loan-mortgage.html; Complaint [D.E. 5], *Jabbari v. Wells Fargo & Co., et al.*, No. 4:15-cv-02159 (N.D. Cal. May 15, 2015); Consent Order, *In the Matter of Wells Fargo Bank, N.A. on Behalf of Wells Fargo Fin. Credit Servs. of N.Y.* (N.Y.D.F.S. 2015); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012). *See also, Cory v. Wells Fargo,* No. 5:28-cv-0532-PGB-PRL (M.D. Fla. 2018).

[2] These loans are commonly known as home equity line of credit loans and will be referred to herein as "HELOC loans" and the mortgage securing such loans as the "HELOC mortgages."

4. Wells Fargo mishandled this important detail by including in its HELOC mortgages earlier maturity dates for the HELOC loans that did not reflect the terms of the EquityLine Agreements. This, in turn, caused the liens of the HELOC mortgages to terminate prior to the maturity dates of the HELOC loans.

5. Upon realizing its mistake, and unwilling to expose itself to the risk of holding potentially hundreds of millions of dollars in unsecured debt, Wells Fargo undertook to change the terms of its HELOC mortgages fraudulently and without notice to its borrowers. Instead of informing their customers of their mistake, Wells Fargo unilaterally recorded instruments entitled "Affidavit of Correction" in the counties where its borrowers resided, purporting to "correct" the maturity dates of the HELOC loans as stated on the HELOC mortgages. Wells Fargo executed and recorded the Affidavits of Correction without notifying borrowers, thus clouding the titles to their properties and reducing the properties' value and marketability without borrowers' knowledge. The Affidavits of Correction were fraudulent instruments, and subject Wells Fargo to criminal liability in every state where the lender recorded them.[3]

6. Plaintiffs bring this lawsuit on behalf of a proposed nationwide class of borrowers who obtained HELOC loans from Wells Fargo and who had fraudulent Affidavits of Correction recorded which purported to change the terms of their HELOC mortgages. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201 on behalf of themselves and the class adjudging the Affidavits of Correction to be void and of no effect. Plaintiffs also seek relief pursuant to 28 U.S.C. § 2202 enjoining Wells Fargo from recording Affidavits of Correction in the future.

---

[3] *See, e.g.,* Calif. Penal Code § 115.5; Colo. Rev. Stat. § 18-5-114; Fla. Stat. § 817.535; Mich. Comp. Laws § 440.9501(6); 18 Pa. C.S.A. § 4911.

12C5651

7. Plaintiffs also bring this case on behalf of a subclass of Florida residents in order to seek injunctive relief for Wells Fargo's violations of section 817.535(8), Florida Statutes.

## II.   PARTIES

8. Plaintiffs Philip W. Tippett and Ingrid Tippett are residents and citizens of the State of Florida. The Tippetts own the following described real property located in Marion County:

> Lot 69, Block A, Silver Springs Forest, according to the Plat thereof recorded in Plat Book F, Page 80, Public Records of Marion County, Florida.

9. Wells Fargo is a federally chartered bank with its principal place of business in San Francisco, California. Wells Fargo provides personal and commercial banking services and is the principal subsidiary of Wells Fargo & Company, a multifaceted financial service company.

10. In 1998, Wells Fargo & Company merged with Norwest Corporation, another banking and financial services company, which owned Dial Bank, a state bank organized and existing under the laws of South Dakota. At that time, Dial Bank was one of the top consumer finance firms in the country, and was among the many such firms with its principal place of business in South Dakota, because that state was the first to deregulate its consumer credit marketplace and allow credit card issuers to charge unlimited interest rates to consumers. Following the Wells Fargo/Norwest merger, Dial Bank changed its name to Wells Fargo Financial Bank and began marketing its deregulated consumer credit products to Wells Fargo's customer's nationwide from the deregulated environment in South Dakota.

11. In 2009, Wells Fargo Financial Bank merged with Wells Fargo Bank, National Association, which is now known as Wells Fargo Bank, N.A.

### III.  JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs are citizens of Florida and Defendant is a citizen of California; there are one hundred or more class members, many of whom citizens of states other than those where Defendant is a citizen; and the aggregate amount in controversy exceeds $5,000,000.

13. This Court has personal jurisdiction over Wells Fargo pursuant to Florida Statutes § 48.193(1)(a)(1), (2), and (6) because Wells Fargo conducts substantial business in this judicial district and a substantial portion of the actions giving rise to the claims took place in this judicial district. Further, Florida has significant contacts with Wells Fargo as there are more than 500 Wells Fargo branches in Florida.

14. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events giving rise to Plaintiffs' claims occurred, and a substantial part of the property that is subject of this action is situated, in this district.

### IV.  FACTUAL ALLEGATIONS

15. Wells Fargo provides revolving lines of credit to consumers, including HELOC loans, which it often offers in conjunction with providing purchase-money financing of consumers' homes. In many cases, Wells Fargo offers these loans to consumers without explaining their purpose or terms, and absent any initiating request by the borrower for such a loan.

16. Wells Fargo's HELOC loans were extended pursuant to the terms of an agreement titled "EquityLine with FlexAbility Agreement" which provided for 10-year draw periods during which borrowers could take cash advances up to certain credit line limits followed by repayment periods of either 15 years or 30 years depending on the amount of the loan balances at the end of

the draw periods. These advances were secured by second mortgages or deeds of trust—the HELOC mortgages—which created liens on the borrowers' properties in favor of Wells Fargo.

17. Because these HELOC loans are secured by second mortgage liens on borrowers' homes, it was crucial that the liens terminate *after* the final maturity date for the loans—the dates on which the borrowers must repay the outstanding balances in full. Otherwise, if Wells Fargo's security interests in the properties terminated before the borrowers had repaid their debt, the balance of the debt due and owing would be unsecured. This would expose Wells Fargo to an increased risk of nonpayment across its portfolio of loans of this kind.

18. Wells Fargo mishandled this important detail by including in its HELOC mortgages earlier maturity dates for the HELOC loans that did not reflect the terms of the EquityLine Agreements. This mistake caused the liens of the HELOC mortgages to terminate prior to the maturity dates of the HELOC loans.

19. Upon realizing its error, and unwilling to expose itself to the risk of holding potentially hundreds of millions of dollars in unsecured debt, Wells Fargo undertook to change the terms of its HELOC mortgages fraudulently and without notice to its borrowers. Instead of contacting their customers, explaining their error, and securing authorization to fix the issue through the correct means, Wells Fargo surreptitiously and unilaterally recorded instruments entitled "Affidavit of Correction" in the counties where its borrowers resided, purporting to "correct" the maturity date of the HELOC loans as stated on the HELOC mortgages. Wells Fargo executed and recorded the Affidavits of Correction without notifying borrowers, obtaining borrowers approvals, or providing any consideration to the borrowers for the unilateral reformation of the mortgage agreements, thus clouding the titles to their properties and reducing the properties' value and marketability without borrowers' knowledge.

12C5651

20. The Affidavits of Correction were fraudulent instruments, and subject Wells Fargo to criminal liability in every state where the lender recorded them.

*Plaintiffs Philip and Ingrid Tippett*

21. Plaintiffs Philip and Ingrid Tippett purchased a home in Ocala, Florida, in October of 2003, with a $100,000 first mortgage from Wells Fargo.

22. Before executing their loan documents, the Tippetts' loan officer at Wells Fargo advised them that they would not need to make an out-of-pocket down payment on the home if they also applied for a $25,000 HELOC loan. The HELOC loan carried an interest rate of 15.569%, while the Tippetts' first mortgage carried an interest rate of 7.2602%.

23. On October 9, 2003, the Tippetts executed three separate agreements: a first mortgage, an EquityLine Agreement, and a HELOC mortgage. The Tippetts' first mortgage, EquityLine Agreement, and HELOC mortgage are attached as **Exhibits A, B**, and **C**, respectively.[4]

24. Pursuant to the terms of the EquityLine Agreement, the draw period on the Tippetts' HELOC loan ended on October 9, 2013, and the repayment period for the loan would continue until a maturity date of either on October 9, 2028, if the unpaid balance on the loan was less than $20,000 at the end of the draw period, or October 9, 2043, if the unpaid balance exceeded that amount.

25. On April 2, 2013, approximately six months before the maturity date of the EquityLine Agreement and without Plaintiffs' knowledge, Wells Fargo executed an Affidavit of Correction, which purported to "correct" the maturity date of its secured interest in the Tippetts' property, changing it from October 25, 2013 to October 9, 2043.

---

[4] The HELOC agreement includes a limited arbitration clause. As such, the Tippetts pursue only equitable claims outside the arbitration clause's reach.

26. Wells Fargo recorded the Affidavit of Correction with the Clerk of Court in Marion County, Florida on April 4, 2013. A copy of the Tippett Affidavit of Correction is attached as **Exhibit D**.

27. The Affidavit of Correction is still reflected in the chain of title for the Tippett Plaintiffs' property in Marion County; as such, the title to their property remains under cloud, and they have been harmed.

28. As with all Class members, at no time prior to the execution of this Affidavit of Correction, and at no time since that affidavit was recorded, did Wells Fargo or any of its agents or assignees inform the Tippetts of Wells Fargo's unilateral action.

29. Neither Wells Fargo nor any of its agents or assignees secured permission or consent from the Tippetts to unilaterally and materially alter the terms of the mortgage contract.

30. The Tippetts received no consideration, monetary or otherwise, from Wells Fargo or any other source as compensation for the unilateral changing of the terms of the mortgage to their detriment.

31. There are no material differences between Wells Fargo's actions and practices directed to the Tippetts and those directed to the class.

### V.    TOLLING OF STATUTE OF LIMITATIONS

**A. Discovery Rule Tolling**

32. Because Wells Fargo had fraudulently and surreptitiously filed the Affidavits of Correction regarding Plaintiffs' and Class members' properties, unilaterally and without their authorization, Plaintiffs and the Class members did not have knowledge of facts that would have led them to discover that their legal rights had been violated.

33. Thus, within the time period of any applicable statutes of limitation, Plaintiffs and

Class members could not have reasonably discovered that Wells Fargo had fraudulently and unilaterally filed the Affidavits of Correction regarding their properties.

34. No reasonable person would have a reason to review whether Wells Fargo had recorded any instruments, much less fraudulent instruments, regarding their properties.

35. For these reasons, all applicable statutes of limitations have been tolled by operation of the delayed discovery rule.

### B. Fraudulent Concealment Tolling

36. All applicable statutes of limitation have also been tolled by Wells Fargo's active fraudulent concealment of its filing of the Affidavits of Correction.

37. Wells Fargo purposely filed the Affidavits of Correction without first seeking consent of Plaintiffs and the Class members knowing that Plaintiffs would have no reason to review or discover these filings.

38. Wells Fargo had a duty to disclose its filings and instead knowingly, affirmatively, or actively concealed them.

39. Because Wells Fargo actively concealed the fraudulent filing by failing to inform or request the authorization from the homeowners, it is estopped from relying on any statutes of limitations defense.

### C. Estoppel

40. Wells Fargo was and is under a continuous duty to disclose to Plaintiffs and Class members the filings of the Affidavits of Correction and the cloud it placed on the loans. Wells Fargo actively concealed the filings and knowingly and purposefully failed to seek consent and authorization from Plaintiffs and the Class members.

12C5651

41. Plaintiffs and Class members reasonably relied upon Wells Fargo's knowing and active concealment and omission of material facts and therefore could not have reasonably discovered the fraudulent filings. Thus, Wells Fargo is estopped from relying on any defense based in statutes of limitations in this action.

## VI. CLASS ACTION ALLEGATIONS

42. Plaintiffs bring this lawsuit as a Class action on behalf of themselves and all other persons similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1)(A) and (b)(2), on behalf of a class and subclass defined as follows:

> **Nationwide Class**: All persons who opened a standard HELOC with Wells Fargo, and for whom Wells Fargo recorded an Affidavit of Correction purporting to extend the maturity date of its security interest in the subject property.
>
> **Florida subclass**: All persons who opened a standard HELOC with Wells Fargo against a property in Florida, and for whom Wells Fargo recorded an Affidavit of Correction purporting to extend the maturity date of its security interest in the subject property.

43. Plaintiffs reserve the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

44. The Class satisfies the requirements of Rule 23(a), as well as 23(b)(1)(A) and (b)(2).

45. <u>Numerosity.</u> On information and belief, the Class consists of thousands of geographically dispersed individuals, with hundreds of putative class members residing in Florida. Joinder of the Class members is not practicable. The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court. Further, the individual Class members are ascertainable, as the names and addresses of all Class members can

be identified in the business records maintained by Wells Fargo. Notice of this action can thus be provided to all members of the proposed Classes.

46. <u>Typicality.</u> Plaintiffs were mortgagors with Wells Fargo at the time of the wrongdoing alleged herein, and Wells Fargo recorded fraudulent Affidavits of Correction against their properties in effort to avert the termination of the lien of the HELOC mortgages. Plaintiffs' claims are typical of the claims of all Class members, as all Class members are similarly affected by Defendant's wrongful conduct as complained of herein.

47. <u>Adequacy.</u> Plaintiffs are committed to prosecuting the action, will fairly and adequately protect the interests of the members of the Classes, and have retained counsel competent and experienced in class action litigation. Plaintiffs have no interests antagonistic to or in conflict with other members of the Classes.

48. <u>Commonality.</u> Common questions of law and fact exist as to all members of the proposed Classes. The questions of law and fact common to the Classes include, but are not limited to:

   a. Whether the Affidavits of Correction filed by Wells Fargo are effective to amend the terms of the class members' HELOC mortgages;

   b. Whether Wells Fargo provided notice to the class members prior to filing the Affidavits of Correction;

   c. Whether Wells Fargo had authorization to file the Affidavits of Correction;

   d. Whether authorization from the homeowners was required;

   e. Whether the Affidavits of Correction created a cloud on the title of each property for which one was recorded;

   f. Whether in recording Affidavits of Correction in the State of Florida, Wells Fargo violated section 817.535, Florida Statutes; and

   g. Whether Plaintiff and the class members are entitled to relief and the nature of such relief.

11

49. The Classes are certifiable under Rule 23(b)(1)(A) because the prosecution of separate actions by or against individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Wells Fargo. Plaintiffs seek injunctive and declaratory relief. If class members were to file multiple lawsuits in multiple courts one court could declare the filing of the affidavits fraudulent and require injunctive relief in the form of Wells Fargo withdrawing the affidavits, while another court could allow Wells Fargo to continue its course of conduct and declare the affidavits lawful. Class treatment will also avoid the substantial risk of inconsistent factual and legal determinations on the many issues in this lawsuit.

50. The Class is certifiable under Rule 23(b)(2). Wells Fargo has acted or refused to act on grounds that apply generally to the Class, so that final injunctive and declaratory relief is appropriate respecting the Class as a whole.

51. There will be no unusual difficulty in the management of this action as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; utilize the provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any Class into subclasses.

12C5651

## COUNT I
## Declaratory Relief pursuant to 28 U.S.C. §§ 2201 and 2202
## (as to All Class Members)

Plaintiffs re-allege and incorporates paragraphs 1-42 above as if fully set forth herein, and further alleges as follows.

52. Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights and other legal relations of the parties in dispute whether or not further relief is or could be sought.

53. An actual and bona fide controversy exists between the Plaintiffs, the Class members and the Defendant as to the rights and obligations under the Affidavits of Correction.

54. Wells Fargo unilaterally executed and recorded Affidavits of Correction purporting to correct a typographical error in the stated maturity dates in Plaintiffs' and class members' HELOC mortgages without the authorization of, or notice to, the Plaintiffs and Class members, and without any legal authority to do so.

55. Plaintiffs and all class members are in doubt as to whether these Affidavits of Correction effectively amend the terms of their HELOC mortgages and as to when lien of such mortgage terminates.

56. Plaintiffs, on behalf of all class members, seek a declaration as to the legal effect, if any, of the Affidavits of Correction that are the subject of this complaint.

57. The declaration sought with regard to the instant controversy is of a justiciable nature, does not amount to an advisory decree and the adverse legal interests of the parties are of sufficient immediacy and materiality to warrant a declaratory judgment.

58. Plaintiffs further seek an Order under 28 U.S.C. § 2202 requiring Wells Fargo to withdraw each of the fraudulently filed Affidavits of Correction and enjoining Wells Fargo from filing such Affidavits in the future.

12C5651

59. Federal Rule of Civil Procedure 57 permits the Court to determine the existence or nonexistence of any right, duty, power, liability, privilege, or of any fact upon which the parties' legal relations depend whether or not another adequate legal remedy exists

## COUNT II
### Violation of section 817.535(8), Florida Statutes (Injunctive Relief)
(as to the Florida Subclass)

Plaintiffs re-allege and incorporate paragraphs 1-42 above as if fully set forth herein, and further allege as follows.

60. Section 817.535(8), Florida Statutes, authorizes "[a]ny person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation" to bring a civil cause of action.

61. The Affidavits of Correction at issue here represent that they are being filed to correct a typographical error in the stated maturity dates in Plaintiffs' and class members' HELOC mortgages. This representation is a materially false, fictitious, and fraudulent statement as Wells Fargo was without authority to unilaterally correct the stated maturity dates described herein.

62. Wells Fargo recorded the Affidavits of Correction without notice to Plaintiffs' or the class members, without their knowledge, and with the intent to defraud them.

63. Plaintiffs and the class members are adversely affected by the Affidavits of Correction, and they impose unwarranted and illegal clouds on the titles to their properties.

64. Because the Affidavits of Correction are void *ab initio*, pursuant to section 817.535(8)(b)(1), Florida Statutes, Plaintiffs and the class members are entitled to an order, (1) sealing the Affidavits of Correction from the official record and removing them from any electronic database used for indexing or locating instruments in the official record; (2) enjoining Wells Fargo from filing or directing the filing any instrument in the public record without prior

12C5651

review and approval for filing by a circuit or county court judge; and (3) granting any other relief the Court deems just and proper. (*Id*.).

65. Plaintiffs are also entitled to recover their costs and attorneys' fees.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and all similarly situated individuals, demand judgment against Defendant Wells Fargo as follows:

(1) Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Class;

(2) Declaring the Affidavits of Correction void as to Plaintiffs and all class members and enjoining Wells Fargo from continuing the acts and practices described above;

(3) Finding that Wells Fargo violated section 817.535(8), Florida Statutes, by recording the Affidavits of Correction in the State of Florida and enjoining it from further violations of the statute;

(4) Ordering Wells Fargo to withdraw each of the fraudulently filed Affidavits of Correction and enjoining Wells Fargo from filing such Affidavits in the future;

(5) Awarding all Plaintiffs and class members their attorneys' fees and costs; and

(6) Awarding such other and further relief the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury as to all issues so triable.

/s/ *Benjamin J. Widlanski*
Benjamin Widlanski, Esq.
Florida Bar No. 1010644
bwidlanski@kttlaw.com
Rachel Sullivan, Esq.
Florida Bar No. 815640

15

rs@kttlaw.com
Robert J. Neary, Esq.
Florida Bar No. 81712
rn@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

/s/*George Franjola*
George Franjola
Florida Bar No. 333271
gfranjola@franjolalaw.com
**LAW OFFICE OF GEORGE FRANJOLA**
3610 E. Fort King St.
Ocala, Florida 34470
Telephone: (352) 812-0462

*Counsel for Plaintiffs*

16

12C5651