UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**PHILIP TIPPETT and INGRID TIPPETT, Individually and on behalf of all others similarly situated**

    Plaintiffs,

v.   Case No: 5:20-cv-342-BJD-PRL

**WELLS FARGO BANK, N.A.,**

    Defendant.

**REPORT AND RECOMMENDATION**[1]

Upon referral, this putative class action is before the court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss (Doc. 32), to which Plaintiffs have responded (Doc. 37). Wells Fargo filed a reply (Doc. 39), and Plaintiffs filed a sur-reply (Doc. 42). For the reasons explained below, including that Plaintiffs have failed to establish standing to state a claim for declaratory judgment and have also failed to state a claim for quiet title, I recommend that the motion to dismiss be granted.

**I. BACKGROUND**

Simply put, this case arises out of a typographical error.[2] That is, Plaintiffs Philip and Ingrid Tippett allege that a mortgage document that was recorded by Wells Fargo pertaining

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

[2] It is worth noting that Plaintiffs affirmatively allege that the "discrepancy in the Tippetts' HELOC mortgage was not a typographical error." (Doc. 30, ¶ 22). As explained below, however,

to their home equity line of credit loan agreement ("HELOC") had the incorrect date, that Wells Fargo's attempt to correct it by filing an "Affidavit to Correct a Scrivener's Error" was done surreptitiously and fraudulently, and that there is now a cloud on the title of their property as a result.

The facts, as alleged in the amended complaint, are as follows. On October 9, 2003, to finance the $125,000 purchase of a home, Plaintiffs Philip and Ingrid Tippett obtained two loans from Wells Fargo: (1) a $100,000 purchase-money loan secured by a first mortgage; and (2) a $25,000 HELOC loan pursuant to an EquityLine Agreement secured by a HELOC mortgage. (Amended Complaint, Doc. 30, ¶ 19). Depending on the balance at the end of the draw period, the loan balance would either convert to a fully amortizing fixed-rate loan repayable in equal monthly payments for a term of fifteen years (if the unpaid balance was less than $20,000) or thirty years (if the unpaid balance was more than $20,000), with the maturity date being the maturity date of the fixed-rate loan. (Doc. 30, ¶ 20). This is an important aspect of Plaintiffs' argument, as they contend that the maturity date for the EquityLine Agreement could not be ascertained until the end of the draw period, and only then based on the balance due on the loan. (Doc. 30, ¶¶ 20, 21).

In any event, a HELOC mortgage was prepared and recorded in the public records for Marion County, Florida, that identified <u>October 25, 2013</u> as the maturity date of the EquityLine Agreement. (Doc 30 ¶ 21, Doc. 30-3, p. 2)). The parties all appear to concede this date was simply an error. Plaintiffs concede that the HELOC mortgage provided that the terms of the EquityLine Agreement controlled over any inconsistent term in the HELOC

---

this allegation is implausible and unsupported, and the parties offer no other explanation for the error.

mortgage. Under that agreement, depending on the loan balance at the end of the ten year draw period, the maturity date of the EquityLine agreement would have been 2028 (if less than $20,000) or 2043 (if more than $20,000).

This error apparently went unnoticed until 2013. On April 4, 2013, Wells Fargo's Vice President of Loan Documentation, Joyce Boston, executed and recorded in the public records for Marion County, Florida an "Affidavit of Correction to Correct a Scrivener's Error," which states, in part, "the MATURITY DATE OF THE SECURED DEBT FOR THE SECURITY INTEREST WAS INCORRECTLY TYPED AS 10/25/2013, and that the document was being filed to "correct the MATURITY DATE OF THE SECURED DEBT FOR THE SECURITY INTEREST to show 10/09/2043." (Doc. 30-4).

Plaintiffs take issue with the affidavit's assignment of a 2043 maturity date because, as they contend, the actual maturity date of the agreement would not have been ascertainable for another six months when the 10-year draw period concluded. Plaintiffs allege that, had their account balance fallen below $20,000 by the end of the draw period, the maturity date would have been 2028, not 2043. (Doc. 30, ¶¶ 20, 34). Plaintiffs allege that Wells Fargo did not notify them or secure their permission to unilaterally and materially alter the terms of their HELOC mortgage and that, therefore, they could not have reasonably discovered the Affidavit of Correction.

Plaintiffs also argue that Wells Fargo purported to hold a lien on their property, but that the lien actually expired no later than October 25, 2018. Plaintiffs reason that, because the Affidavit of Correction was invalid, Wells Fargo did not properly extend its HELOC mortgage lien past October 25, 2013. Plaintiffs reach this conclusion by reasoning that, under Florida law, the lien terminated within five years of that date, citing Fla. Stat. § 95.281.

Plaintiffs contend that, because the Affidavit of Correction was filed without the terms of the EquityLine Agreement, Wells Fargo has cast a cloud over their title by purporting to extend the lien to October 9, 2043, when under their theory it expired as a matter of law no later than October 25, 2018. Despite this argument, Plaintiffs also concede that "the maturity date for Plaintiffs' HELOC loan is October 9, 2043." (Doc. 30, ¶ 33).

Plaintiffs' amended complaint seeks to certify a class of "All persons who opened a standard HELOC with Wells Fargo, and for whom Wells Fargo recorded an Affidavit of Correction purporting to extend the maturity date of its security interest in the subject property." (Doc. 30 para. 37). The amended complaint brings two claims: (1) quiet title; and (2) declaratory relief under 28 U.S.C. Sec. 2201 & 2202.

## II.  LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences from there. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual

allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit uses a two-pronged approach in applying the holding in *Ashcroft* and *Twombly*. First, the Court must "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

A well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

Here, Plaintiffs bring suit under the Declaratory Judgment Act, which provides, in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "The purpose behind the Declaratory Judgment Act is to afford a new form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Cas. Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190, 1193 (S.D. Fla. 1989). Specifically, the Act permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty. *Id*.

The Declaratory Judgment Act grants to the federal district courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. An essential element for every declaratory judgment action is the existence of an "actual controversy" between the parties. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937). An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's resolution of the matter would be purely academic. *See Texas v. United States*, 523 U.S. 296, 300 (1998); *Aetna Life Ins. Co.*, 300 U.S. at 240–41. On the other hand, a court should permit a claim for declaratory judgment to

proceed where declaratory relief would (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004).

### III. DISCUSSION

Wells Fargo moves to dismiss the amended complaint on numerous grounds including that Plaintiffs' claim for declaratory judgment fails for lack of standing and that all of Plaintiffs' claims fail under Fed. R. Civ. P. 12(b)(6). The Court will address each of Plaintiffs' claims in turn.

#### A. DECLARATORY JUDGMENT

Wells Fargo argues that Plaintiffs lack standing because they have not alleged facts to support any actual harm. Wells Fargo contends that Plaintiffs have simply alleged in a conclusory manner that they have been somehow harmed by the Affidavit of Correction. In fact, Wells Fargo points out that aligning the parties' intended maturity date with the recorded date benefitted Plaintiffs because Wells Fargo granted Plaintiffs a longer period of time during which to pay on their mortgage without facing foreclosure.

Wells Fargo argues that, at most, Plaintiffs have alleged a procedural violation – not harm. Wells Fargo contends that such "bare procedural violations" are insufficient to establish standing. *See Stacy v. Dollar Tree Stores, Inc*. 274 F. Supp. 3d 1355, 1364 (S.D. Fla 2017).

In an attempt to allege an injury to establish a basis for declaratory judgment, Plaintiffs allege that they "remain exposed to a lawsuit by Wells Fargo to foreclose the HELOC mortgage should Plaintiffs default on the loan . . . [and] Plaintiffs are not able to sell or

refinance their property free and clear of the Affidavit of Correction." (Doc. 30, ¶ 35). Wells Fargo contends that Plaintiffs must plead a substantial likelihood of future injury to establish a claim of declaratory relief, and these allegations are insufficient. Wells Fargo points out that Plaintiffs have only pled "contingent future injuries," such as exposure to a foreclosure suit if they default, or possible difficulty selling the property or refinancing a mortgage. Notably, Plaintiffs have not alleged they are actually in default, that they are selling their property, or that they are refinancing a mortgage. Wells Fargo contends that these omissions are fatal to their request for declaratory judgment. These contingencies may or may not occur and a "'maybe' chance is not enough." *See, e.g., Carvalho-Knighton v. Univ. of S. Fla. Bd. Of Trs.*, 2016 WL 7666137, at *5 (M.D. Fla. Mar. 18, 2016) ("[A] 'perhaps' or 'maybe' chance is not enough.").

Moreover, Wells Fargo persuasively argues that no harm can be caused by correcting an error to conform to the parties' actual understanding and agreement. The Court agrees. First, the undersigned finds it difficult to conceive of the harm alleged by Plaintiffs as anything other than speculative. Any theoretical harm alleged is contingent upon a variety of scenarios such as Plaintiffs' attempting to sell, refinance, or going into default. Second, and most importantly, even as alleged, the harm would be little more than a clarification of the recorded mortgage to reflect the actual understanding and terms between the parties. That said, the Court acknowledges Plaintiffs' argument that, at the time the Affidavit of Correction was filed correcting the maturity date to 2043 as to their property, there existed the theoretical possibility that Plaintiffs may have paid down their balance and the maturity date would then have been 2028. Plaintiffs do not allege, however, that this possibility ever came to pass. Rather, it appears that when Wells Fargo filed the Affidavit of Correction in the Tippetts'

case, it did so based on the best information available at the time and, perhaps, made an educated guess about what the maturity date would ultimately be. Plaintiffs have not alleged that, ultimately, the 2043 maturity date turned out to be incorrect based on their balance at the end of the draw period. Plaintiffs allege that the affidavit is invalid due to the circumstances under which it was filed, but they do not allege that it is incorrect in substance.

So, the harm alleged by Plaintiffs is contingent at best, and it appears that the contingencies that may have triggered the alleged harm have not occurred. And, although the affidavit was filed prior to the end of the draw period, it appears that the draw period did close with the Tippetts' balance in an amount that aligned with a maturity date of 2043 as provided in the terms of the EquityLine Agreement between the parties. In other words, under the present circumstances, the Affidavit reflects little more than Wells Fargo's attempt to clarify a typographical error, and to correct the public records to reflect the actual maturity date under the parties underlying agreement.

To be sure, the events might have unfolded differently. As Plaintiffs point out, the Tippetts might have paid down their balance before the end of the draw period. But that was not the case, and those are not the facts alleged in the amended complaint. The court must consider these issues based on the facts alleged, not the universe of possible facts that may have been alleged.

In the motion and response, the parties have cited cases that are only very loosely analogous to the instant case. In light of the circumstances of this case, and the particular facts alleged in the amended complaint, the undersigned concludes that the Plaintiffs have fallen short of the pleading requirements for an actual controversy, which exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Here, the theoretical harm alleged by Plaintiffs is neither substantial nor sufficiently immediate and real to warrant declaratory judgment.

As the Eleventh Circuit has held, in order to have standing to seek declaratory relief, Plaintiffs "must allege and ultimately prove "a real and immediate – as opposed to a merely hypothetical or conjectural – threat of future injury." *Strickland v. Alexander*, 772 F.3d 876, 882 (11th Cir. 2014) (Doc. 30, ¶ 33). To this, Plaintiffs state that they "allege that a cloud exists on their title *now*," and that the property's marketability and value has been reduced without their knowledge. (Doc. 30, ¶ 33). These allegations, however, do not pass the plausibility test under the circumstances, as they amount to bare conclusions regarding the impact of the Affidavit of Correction on the Tippets' property. *See Iqbal*, 556 U.S. at 678 (pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Here, there is no sufficient factual matter to support the conclusion about the property's alleged reduced value and marketability. And, it seems implausible that the affidavit's correction of a typographical error that has the effect of bringing the recorded mortgage into alignment with the parties' actual agreement would have any undue negative impact on the value or marketability of the title. Undoubtedly, such errors occur occasionally and common sense dictates that they would be dealt with as a matter of course by prospective real estate brokers, buyers, mortgage lenders or refinancers, or title insurance representatives. Any impact appears to be hypothetical, as opposed to real and immediate harm. For these

reasons, the undersigned submits that Plaintiffs have failed to establish a real and immediate injury and have therefore failed to establish standing. Consequently, Plaintiffs' claim for declaratory relief should be dismissed for lack of justiciability.

### B.  QUIET TITLE

First, the undersigned observes that Plaintiffs' quiet title claim fails for lack of standing for the same reasons discussed above. Wells Fargo has also moved to dismiss the amended complaint on the grounds that Plaintiffs' claims fail under Federal Rule of Civil Procedure 12(b)(6). Wells Fargo also argues that the quiet title claim fails because Plaintiffs have failed to allege all necessary elements.

Under Florida law, in order to state a claim for quiet title, a plaintiff must establish (1) the plaintiff's valid title; (2) the manner which the plaintiff obtained the title; (3) the basis upon which the defendant asserts an interest on the title; and (4) the invalidity of the defendant's interest in the property. *Barrows v. Bank of Am., NA*, 2014 WL 7337429, at *2 (M.D. Fla. Dec. 23, 2014). "A claim for quiet title in Florida 'must not only show title in the plaintiff to the lands in controversy, but also that a cloud exists, before relief can be given against it.'" *Lane v. Guar. Bank*, 552 F. App'x 934, 936 (11th Cir.2014) (quoting *Stark v. Frayer*, 67 So. 2d 237, 239 (Fla. 1953)).

Here, Wells Fargo contends that Plaintiffs cannot show that the defendant's interest is invalid. Wells Fargo argues, "[o]n the contrary, it is precisely what Plaintiffs agreed to when they executed the agreement for their HELOC in 2003." (Doc. 32, p. 14). The Court finds this argument persuasive. Plaintiffs certainly dispute the procedure and unilateral nature by which the affidavit was filed in the public records, but they do not dispute its substance. That said, Plaintiffs do affirmatively argue that "[a]ny interest Wells Fargo had in the Tippetts'

property terminated no later than October 25, 2018," citing ¶ 33 of the amended complaint. (Doc. 30). That paragraph, however, merely recites Plaintiffs' convoluted and conclusory argument that, under Florida Statutes § 95.281, the lien terminated in 2018. (Doc. 30, ¶ 33). In other words, Plaintiffs' contention that Wells Fargo's interest in the property terminated in 2018 is a mere legal conclusion, as opposed to a well-pled factual allegation, and must be eliminated. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Plaintiffs do not go so far as to allege that the bank's interest is invalid. Rather, Plaintiffs stand on their argument that Wells Fargo's interest terminated in 2018. They largely dispute the procedure and timing of the affidavit and, based on their interpretation of the Florida Statutes regarding mortgage liens, offer the convoluted theory that Wells Fargo unlawfully and "surreptitiously" extended its interest beyond what it originally appeared to be based on the initial incorrect maturity date of 2013. Plaintiffs also allege that Wells Fargo exceeded its authority by unilaterally filing the affidavit without obtaining Plaintiffs' permission. Yet, all of that is beside the point because Plaintiffs ultimately do not dispute that Wells Fargo has a valid interest and that the Affidavit of Correction was intended to bring the recorded documents into alignment with the parties' intentions and agreement. *See Byrd v. Bank Mortgage Solutions*, LLC, 2014 WL 12861313 (S.D. Fla. Apr. 17, 2014), *R &R adopted*, 2014 12861416 (S.D. Fla. Sept. 8, 2014) (dismissing a quiet title claim and reasoning that the plaintiff did not dispute his agreement or his obligations, but cited a range of legal defects, and finding that the subject mortgage and note did not create an improper or unlawful cloud on this title).

It is worth noting that Plaintiffs admit they "still have a contractual obligation to pay the balance of the loan, even if that debt is not secured by Wells Fargo's HELOC mortgage."

(Doc. 37, p. 16). Plaintiffs' position is perplexing. Despite conceding that they are contractually obligated to pay the loan balance, and that the terms of the "HELOC mortgage provided that the terms of the EquityLine Agreement controlled over any inconsistent term in the HELOC mortgage," Plaintiffs nonetheless contend that Wells Fargo's interest in the Tippetts' property terminated in 2018. (Doc. 37, p. 4, 7, Doc. 30-3, p.7). Plaintiffs' argument is illogical. Even if the lien recorded in the public records terminated as a matter of fact or procedure, Wells Fargo's true interest, i.e., the *right* to a lien against the property was not extinguished because it was established under the EquityLine Agreement. (Doc. 30-2). Notably, Plaintiffs have not cited a single case suggesting that a bank's filing an Affidavit of Correction or similar document under circumstances such as occurred here is sufficient to establish a claim for quiet title. Indeed, relative to the sufficiency of their quiet title claim, the only case cited by Plaintiffs is *Byrd,* 2014 WL 12861313, which was cited by Wells Fargo, and which Plaintiffs only cite in an attempt to distinguish it. Simply put, Plaintiffs offer no authority for their proposition that the circumstances of this case are sufficient to support a claim for quiet title.

Meanwhile, an informal survey of Florida law provides examples of cases where a quiet title action was the appropriate vehicle to redress the parties' dispute. *See, e.g.,Bd. of Trustees of Internal Imp. Tr. Fund v. Fla. Pub. Utilities Co.,* 599 So. 2d 1356, 1357 (Fla. 1st DCA 1992) (quiet title action to determine dispute over ownership of body of water); *Brown v. Semple*, 204 So. 2d 229, 230 (Fla. 3d DCA 1967) (quiet title action to determine lot boundaries); *Jones v. Muldrow*, 921 So. 2d 762, 763 (Fla. 1st DCA 2006) (quiet title action to resolve dispute regarding claim based on the theory of boundary by acquiescence). Suffice it to say, neither Plaintiffs nor the Court has identified any precedent that suggests that, in

circumstances such as presented by the alleged facts in this case, a claim for quiet title is supported.

In reaching the conclusion that Plaintiffs have failed to state claims for quiet title and declaratory judgment, it is not necessary for the Court to decide the multitude of other issues Plaintiffs raise in their amended complaint and pleadings. Those issues include whether the affidavit is an "invalid lien," whether Plaintiffs' interpretation of when Wells Fargo's lien terminated is correct, and whether Wells Fargo violated its authority or the terms of the parties' contract by unilaterally filing the Affidavit of Correction. Resolution of those issues is not necessary to the Court's determination that Plaintiffs have failed to state claims for quiet title and declaratory relief.

For the reasons explained above, the Court submits that Plaintiffs' claims also fail under Rule 12(b)(6). Consequently, the Court need not address Wells Fargo's additional argument that both of Plaintiffs' claims are time barred.

As a penultimate matter, the Court notes that Plaintiffs attempt to connect the Affidavit of Correction in this case with "numerous other well-publicized instances" where they contend the bank "has privileged profits over the contracts it has with its customers." In considering the sufficiency of Plaintiffs' claims, however, the Court must consider the allegations in the amended complaint, as opposed to the unspecified wrongs to which Plaintiffs allude.

Finally, the undersigned acknowledges that Plaintiffs requested a hearing on the motion to dismiss. The undersigned, however, has determined that a hearing was not necessary in making these recommendations.

### IV. RECOMMENDATION

For the reasons stated above, I recommend that Wells Fargo Bank, N.A.'s motion to dismiss the amended class action complaint (Doc. 32) be Granted. Plaintiff's motion for a hearing on the motion to dismiss (Doc. 38) is Denied.

Recommended in Ocala, Florida on June 4, 2021.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy